**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEANNE ANDROSIGLIO,<br><br>                    Plaintiff,<br><br>        v.<br><br><br><br>SANDERSON FARMS, INC., FRED BANKS, JR., DAVID BARKSDALE, JOHN BIERBUSSE, LAMPKIN BUTTS, MIKE COCKRELL, TONI D. COOLEY, BEVERLY HOGAN, EDITH KELLY-GREEN, PHIL K. LIVINGSTON, SUZANNE MESTAYER, SONIA PEREZ, GAIL JONES PITTMAN, AND JOE F. SANDERSON, JR.,<br><br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeanne Androsiglio ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Sanderson Farms, Inc. ("Sanderson Farms" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Sanderson Farms and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Sanderson Farms and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Cargill Meat Solutions Corporation ("Cargill"), and the Continental Grain Company ("Continental Grain" and together with Cargill, the "Purchasing Group") and their affiliates (the "Proposed Transaction").

2.      On August 8, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Walnut Sycamore Holdings LLC ("Parent"), Sycamore Merger Sub LLC, a wholly owned subsidiary of Parent ("Merger Sub"), and Wayne Farms LLC ("Wayne Farms"). Parent and Merger Sub are entities affiliated with Cargill and Wayne Farms is an entity affiliated with Continental Grain. Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into Sanderson Farms with Sanderson Farms continuing as the surviving corporation and an indirect wholly owned subsidiary of Parent. As a consequence of the merger, the Company's shareholders will receive $203.00 in cash for each share of Company common stock they own (the "Merger Consideration").

3.      On September 13, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Sanderson Farms and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sanderson Farms shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of Sanderson Farms shares.

9.     Defendant Sanderson Farms is incorporated under the laws of Mississippi and has its principal executive offices located at 127 Flynt Road, Laurel, Mississippi 39443.   The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "SAFM."

10.    Defendant Fred Banks, Jr. ("Banks") is and has been a Sanderson Farms director at all times during the relevant time period.

11.    Defendant David Barksdale ("Barksdale") is and has been a Sanderson Farms director at all times during the relevant time period.

12.    Defendant John Bierbusse ("Bierbusse") is and has been a Sanderson Farms director at all times during the relevant time period.

13.    Defendant Lampkin Butts ("Butts") is and has been the President and a director of Sanderson Farms at all times during the relevant time period.

14.    Defendant Mike Cockrell ("Cockrell") is and has been a Sanderson Farms director at all times during the relevant time period.

15.    Defendant Toni D. Cooley ("Cooley") is and has been a Sanderson Farms director at all times during the relevant time period.

16.    Defendant Beverly Hogan ("Hogan") is and has been a Sanderson Farms director at all times during the relevant time period.

17.    Defendant Edith Kelly-Green ("Kelly-Green") is and has been a Sanderson Farms director at all times during the relevant period.

18.    Defendant Phil K. Livingston ("Livingston") is and has been a Sanderson Farms director at all times during the relevant period.

19.    Defendant Suzanne Mestayer ("Mestayre") is and has been a Sanderson Farms director at all times during the relevant period.

20.    Defendant Sonia Perez ("Perez") is and has been a Sanderson Farms director at all times during the relevant period.

21.    Defendant Gail Jones Pittman ("Pittman") is and has been a Sanderson Farms director at all times during the relevant period.

22.    Defendant Joe F. Sanderson, Jr. ("Sanderson") is and has been the Chief Executive Officer ("CEO"), and a director of Sanderson Farms at all times during the relevant time period.

23.    Defendants Banks, Barksdale, Bierbusse, Butts, Cockrell, Cooley, Hogan, Kelly-Green, Livingston, Mestayer, Perez, Pittman, and Sanderson are collectively referred to herein as the "Individual Defendants."

24.    The Individual Defendants, along with Defendant Sanderson Farms, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.    Sanderson Farms an integrated poultry processing company, produces, processes, markets, and distributes fresh, frozen, and prepared chicken products in the United States. The company sells ice-packed, chill-packed, bulk-packed, and frozen chicken primarily under the Sanderson Farms brand name to retailers, distributors, and casual dining operators in the southeastern, southwestern, northeastern, and western United States, as well as to customers who resell frozen chicken into export markets. Its prepared chicken product line includes institutional and consumer packaged partially cooked or marinated chicken items for distributors and food service establishments.

### The Company Announces the Proposed Transaction

26.    On August 9, 2021, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

MINNEAPOLIS and NEW YORK and LAUREL, Miss., Aug. 9, 2021 /PRNewswire/ -- Cargill, Continental Grain Company, and Sanderson Farms, Inc. (NASDAQ: SAFM) announced today they have reached a definitive agreement for a joint venture between Cargill and Continental Grain to acquire Sanderson Farms for $203 per share in cash, representing a total equity value for Sanderson Farms of $4.53 billion. The purchase price represents a 30.3% premium to Sanderson Farms' unaffected share price of $155.74 on June 18, 2021, the last full trading day prior to media speculation about the potential sale of Sanderson Farms; a 22.8% premium to the Sanderson Farms 30-day volume weighted average price ("VWAP") as of June 18, 2021, and a 15.2% premium to the all-time high share price as of June 18, 2021. Upon completion of the transaction, Cargill and Continental Grain will combine Sanderson Farms with Wayne Farms, a subsidiary of Continental Grain, to form a new, privately held poultry business.

The combination of Sanderson Farms and Wayne Farms will create a best-in-class U.S. poultry company with a high-quality asset base, complementary operating cultures, and an industry-leading management team and workforce. The new company will be well positioned to enhance its service to customers across retail and food service and drive organic growth in an industry fueled by affordability and key consumer trends around the health, sustainability, and versatility of chicken.

"Since my grandfather founded Sanderson Farms 75 years ago, our many significant achievements have been driven by our commitment to providing the very best chicken products in a profitable manner that benefits each of the constituents who contribute to our success. This transaction is the culmination of that commitment, as it delivers a significant value to our stockholders, reflecting the dedication of our team, and our best-in-class assets, quality products, efficient and sustainable operations, and respected brand," said Joe Sanderson, Chairman and Chief Executive Officer of Sanderson Farms, Inc. "We are proud to be joining with Cargill and Continental Grain and we are confident that they will be strong stewards of the Sanderson Farms team, brand and assets going forward. As part of the newly created company, Sanderson Farms and its new owners will remain committed to the employees, poultry producers, customers, communities, environment, and animals under our care, and to continuing to deliver the highest quality products and the best service in our industry to our customers."

"We are very happy to partner with Cargill with whom we have had a decades-long relationship between two family-owned companies. Sanderson Farms' operations, best-in-class assets and valuable brand have underscored their success, and we have the highest respect for Joe Sanderson, and the business and team he

has built as the third generation CEO," said Paul Fribourg, Chairman and CEO of Continental Grain. "Wayne Farms has been one of the most important and successful parts of Continental Grain for almost 60 years, so bringing together two great partners with two great poultry companies will ensure good things for our customers, our grower partners, and our employees."

The new company will have state-of-the-art operations and will continue to invest in its workforce and in employee safety. Operations will include poultry processing plants and prepared foods plants across Alabama, Arkansas, Georgia, Louisiana, Mississippi, North Carolina, and Texas.

"At Cargill, we are committed to nourishing the world in a safe, responsible and sustainable way," said David MacLennan, Chairman and CEO of Cargill. "Expanding our poultry offerings to the U.S. is a key enabler of our ability to meet customer and consumer demands. With these great businesses, and our strong partnership, we believe we will deliver a superior portfolio of products and services to our customers."

Cargill expects to support the new joint venture with its longstanding relationships with retail and foodservice customers. Wayne Farms, part of Continental Grain's food, agriculture and commodities investment portfolio since 1965, has roots in the poultry industry that go back more than a century.

PARTNERING WITH FARMERS AND COMMUNITIES

Cargill, Continental Grain, and Sanderson Farms are committed to ensuring operational excellence, workplace safety, and the highest quality of product for the U.S. poultry industry.

Cargill and Continental Grain have long histories of investing and partnering with American farmers and are dedicated to strengthening the food and agriculture industries for the benefit of consumers and growers. Their shared culture, built on the principles of supporting farmers and communities, complements Sanderson Farms' reputation as one of the industry's most respected operators. Sanderson Farms' strong brand, reputation, and best-in-class assets will remain a core part of the combined company. In addition, Wayne Farms' deep customer relationships across the food service sector complement Sanderson Farms' diverse grocery and retail relationships.

TRANSACTION DETAILS

The transaction is expected to close by the end of 2021 or early 2022, and will be subject to regulatory and Sanderson Farms stockholder approval, and other customary closing conditions.

The acquisition consortium has committed equity and debt financing in place to complete the transaction.

Wayne Farms CEO Clint Rivers will lead the combined company.

Upon the completion of the transaction, Sanderson Farms will become a private company, and its shares will no longer be traded on NASDAQ.

BofA Securities acted as the financial advisor to Cargill and Freshfields Bruckhaus Deringer (US) LLP acted as legal counsel. Gibson Dunn & Crutcher acted as tax counsel.

Centerview Partners LLC acted as financial advisor to Sanderson Farms and Wachtell Lipton Rosen & Katz and Fishman Haygood LLP acted as legal counsel.

Lazard acted as the financial advisor for Wayne Farms and Continental Grain, and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal counsel.

## FALSE AND MISLEADING STATEMENTS

## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

27.     On September 13, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

28.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projection

29.     The Proxy Statement contains projections prepared by the Company's a management concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

31.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

32.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDA; (ii) NOPAT; and (iii) Unlevered Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Sales Process**

34.     The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

35.     First, the Proxy Statement fails to disclose sufficient information concerning the nature of all confidentiality agreements entered into between Sanderson Farms and any interested third party during the sales process, as well as, the specific conditions, if any, under which the standstill provisions would fall away or prevent parties from submitting a bid.

36.     The Proxy Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

37.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Centerview's Financial Opinion**

38.     The Proxy Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction, but fails to provide material information concerning such.

39.     With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the individual metrics for each of the companies observed; (ii) the inputs and assumptions underlying Centerview's application of a downward adjustment of 25% to the median EV/EBITDA multiples for the selected companies; (iii) Sanderson Farm's net cash as of July 31, 2021; and (iv) the number of fully diluted shares outstanding of Sanderson Farms common stock as of July 31, 2021.

40.     With respect to Centerview's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual metrics for each of the transactions observed in the analysis.

41.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied equity values for Sanderson Farms; (ii) the basis underlying Centerview's use of a range of discount rates of 7.5% to 8.5%; (iii) the basis underlying Centerview's use of perpetuity growth rates of 1.0% to 2.0%; (iv) estimated net cash of Sanderson Farms as of July 31, 2021; (v) the number of fully diluted shares outstanding of Sanderson Farms common stock as of July 31, 2021.

42.     With respected to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the analysts observed in the analysis; and (ii) the corresponding price targets.

43.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support

of its fairness opinion.

44.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48.     Defendants have issued the Proxy Statement with the intention of soliciting

shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

51.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The

Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

53.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Sanderson Farms within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sanderson Farms, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

59.     In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 27, 2021                                Respectfully submitted,

                                                         By: */s/ Joshua M. Lifshitz*
                                                         Joshua M. Lifshitz
                                                         Email: jml@jlclasslaw.com
                                                         **LIFSHITZ LAW FIRM, P.C.**
                                                         1190 Broadway,
                                                         Hewlett, New York 11557
                                                         Telephone: (516) 493-9780
                                                         Facsimile: (516) 280-7376

                                                         *Attorneys for Plaintiff*